Betty **BRIDGES**, Appellant,

v.

**METROMEDIA STEAKHOUSE COMPANY, L.P., d/b/a Ponderosa Steak House**, Appellee.

No. 45A05–0309–CV–434.

Court of Appeals of Indiana.

April 30, 2004.

---

Barry D. Sherman, Kristen D. Hill, Barry D. Sherman & Associates, Hammond, IN, Attorneys for Appellant.

Steven A. Johnson, Jennifer L. Deboer, Johnson & Rappa, Merrillville, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Betty Bridges sued Metromedia Steakhouse Company, L.P., d/b/a Ponderosa Steak House ("Metromedia"), after she sustained a burn injury while visiting one of Metromedia's restaurants. A jury returned a verdict in favor of Bridges, but also assessed her forty percent comparative fault. She appeals and presents the following issues for our review:

1. Whether the trial court abused its discretion when it allowed an insurance adjustor to testify regarding the extent of Bridges' injury based upon her observation during the parties' mediation.

2. Whether the trial court abused its discretion when it allowed that testimony despite Metromedia's failure to identify the insurance adjustor as a witness prior to trial.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On October 24, 1998, Bridges was preparing a plate of food at a buffet in the Ponderosa restaurant in Griffith. As she scooped macaroni and cheese onto her plate, steam from the steam table burned her hand. Bridges sought medical treatment the following day, and she was diagnosed as having sustained second-degree burns. During the weeks that followed, Bridges' burns began to blister and ooze. Bridges continued treatment with her family physician, Dr. Kendell Oetter, until her discharge from his care in June 1999. At that time, Dr. Oetter noted that her injuries had healed, but that she had scarring.

In August 1999, Bridges filed a complaint against Metromedia alleging that its negligence caused her injuries. On June 27, 2002, the parties participated in a court-ordered mediation session, but they were unable to reach a settlement. At trial, Bridges testified that she had raised scars and redness on her hand for four and one-half years following the burn injury in October 1998 and that she had recently undergone laser treatments to eliminate the scars. Metromedia called Sandy Hojnacki as an impeachment witness to testify that when she saw Bridges' hand during mediation in June 2002, she did not see any scarring or redness. Bridges immediately objected to Hojnacki's testimony on the basis that Metromedia had not previously disclosed Hojnacki as a potential witness. The trial court overruled that objection. Then, when Hojnacki took the stand, Bridges recognized her as the insurance adjustor who had participated in the court-ordered mediation and objected to her testimony on the basis that "everything that goes on [during mediation] is confidential in trial[.]" The trial court ultimately overruled that objection and allowed Hojnacki's testimony.

At the conclusion of trial, the jury assessed Bridges' total damages at $5,000 and returned a verdict in Bridges' favor, but assessed her forty percent at fault in causing her injuries. Thus, Bridges' total damage award was $3,000. This appeal ensued.

### DISCUSSION AND DECISION

#### Issue One: Admissibility of Hojnacki's Testimony

■ Bridges first contends that the trial court abused its discretion when it permitted Hojnacki to testify regarding what she

observed during the parties' court-ordered mediation. Specifically, Bridges maintains that Hojnacki should not have been permitted to testify regarding the appearance of Bridges' hand, because that testimony was based solely upon Bridges' "nonverbal conduct" during mediation, which is confidential and inadmissible under Indiana Rule for Alternative Dispute Resolution ("ADR") 2.11 and Indiana Rule of Evidence 408. This is an issue of first impression for Indiana courts.

■■■ A trial court has broad discretion in determining the propriety of admission of evidence. *Mullis v. Brennan*, 716 N.E.2d 58, 66 (Ind.Ct.App.1999). Reversal of the trial court's ruling is warranted only when the court has abused its discretion, and its action is clearly erroneous and against the facts and circumstances before it. *Id.* We will not reverse the trial court's admission of evidence absent a showing of prejudice. *Id.*

ADR Rule 2.11 provides as follows:

Mediation shall be regarded as settlement negotiations as governed by Ind. Evidence Rule 408. For purposes of reference, Evid. R. 408 provides as follows:

**Rule 408. Compromise and Offers to Compromise**

*Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept*

*a valuable consideration in compromising or attempting to compromise a claim, which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.*[1] *Compromise negotiations encompass alternative dispute resolution.*

Mediation sessions shall be closed to all persons other than the parties of record, their legal representatives, and other invited persons.

Mediators shall not be subject to process requiring the disclosure of any matter discussed during the mediation, but rather, such matter shall be considered confidential and privileged in nature. The confidentiality requirement may not be waived by the parties, and an objection to the obtaining of testimony or physical evidence from mediation may be made by any party or by the mediators.

---

1. Bridges points out that the former version of this rule, ADR Rule 2.12, included an additional sentence which provided as follows: "This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of the mediation process." *See Vernon v. Acton*, 732 N.E.2d 805, 808 (Ind.2000); *R.R. Donnelley & Sons Co. v. North Texas Steel*, 752 N.E.2d 112, 128 (Ind.Ct.App.2001), *trans. denied.* Bridges maintains that the trial court improperly relied on case law interpreting that language in the former rule when it ruled on the admissibility of Hojnacki's testimony. Our research does not reveal any explanation for the omission of the sentence from ADR Rule 2.11. Indiana Evidence Rule 408 likewise does not include that sentence, which is found in the uniform and federal rules which correspond to Rule 408. Judge Robert Miller opines that "the omission of that sentence is not significant in [Rule 408's] operation." ROBERT LOWELL MILLER, JR., 12 INDIANA EVIDENCE 504 (2nd ed.1995). Regardless, our resolution of this appeal does not depend on whether the omission is significant in the operation of ADR Rule 2.11, and we leave that issue for another day.

(Italics original, emphasis added). Black's Law Dictionary defines "statement" in relevant part as "nonverbal conduct intended as an assertion," and it defines "conduct" as "[p]ersonal behavior, whether by action or inaction; the manner in which a person behaves." *See* BLACK'S LAW DICTIONARY 292, 1416 (7th ed.1999).

During trial, Hojnacki's entire testimony on direct examination was as follows:

Q: Good morning, Ms. Hojnacki.

A: Good morning.

Q: Can you tell the jury what condition Ms. Bridges' right hand was in on or about June 27th of 2002?

A: Yes. I was asked to look at her hand and I didn't see anything; I saw nothing.

Q: Did you see any redness?

A: No.

Q: Did you see any blisters?

A: I did not.

Q: Did you see any scarring?

A: No.

Q: Were her hands puffy?

A: No.

Q: I have no further questions. Thank you.

There is no evidence in the record showing who asked Hojnacki to look at Bridges' hand or whether she was asked to do so before or during the mediation. The record merely indicates that Hojnacki observed Bridges' hand from across a conference room table during mediation.

On appeal, Bridges states that she "display[ed]" her hand to Hojnacki and "point[ed] to the scars." But Bridges does not cite to anything in the record in support of those assertions.[2] Hojnacki's testi-mony consists entirely of her personal observation of Bridges' hand, which cannot be construed as either "nonverbal conduct intended as an assertion" or "personal behavior." *See* BLACK'S LAW DICTIONARY 292, 1416 (7th ed.1999). Accordingly, we conclude that her testimony does not constitute either conduct or a statement made in the course of mediation. The trial court did not abuse its discretion when it permitted Hojnacki's testimony.

We note, however, that our holding does not establish a new exception to the general rule that matters discussed in mediation are confidential and privileged. The rationale for that general rule is that the law favors out of court compromises and that a party who yields certain points in an effort to effectuate such a compromise should not be prejudiced if those efforts fail. *Brademas v. Real Estate Dev. Co.*, 175 Ind.App. 239, 370 N.E.2d 997, 999 (1977). Rule 408 by its own terms generally disallows only evidence of offers of valuable consideration in settlement of disputed claims. David Leonard, *The New Wigmore: A Treatise on Evidence* § 3.7 (2000) (addressing Federal Rule 408). And courts have permitted the use of settlement evidence for impeachment in a variety of circumstances, particularly when the adverse party has inadvertently or unwisely opened the door to such impeachment. *See generally* Clifford S. Fishman, *Jones on Evidence* § 22.29 (2000). If, however, the witness being impeached is also a party to the lawsuit, a court should be particularly sensitive to the risk that the jury will interpret the information as an admission that the party is not entitled to the damages being sought. *Id.*

---

**2.** At one point, during cross-examination, Hojnacki stated that Bridges "put her hand out[,]" but she was interrupted and did not finish her sentence. Thus, we do not know whether Bridges "put her hand out" for the purpose of showing it to Hojnacki or whether it was merely an inadvertent shift in Bridges' body position.

In this case, the evidence at issue was information about Bridges' appearance during settlement proceedings and could not be characterized as evidence of an offer of valuable consideration in settlement of a disputed claim. On the limited record available to us on appeal, again, we cannot say that the trial court abused its discretion when it allowed Hojnacki's testimony.

### Issue Two: Failure to Disclose Witness

■ Bridges next contends that the trial court abused its discretion when it permitted Hojnacki to testify because Metromedia had not included her name on any witness list or otherwise notified her prior to trial that Hojnacki would testify. Metromedia maintains that it complied with the pretrial order, which did not require disclosure of impeachment or rebuttal witnesses prior to trial.[3]

■ The question of whether particular witnesses or exhibits should be excluded from evidence because they have not been included in a pretrial order or list of witnesses and exhibits is committed to the discretion of the trial court. *Riehle v. Moore*, 601 N.E.2d 365, 370 (Ind.Ct.App. 1992), *trans. denied.* "In reviewing a trial court's ruling in such a case we must remember that, 'The law provides no official "right" answer; rather it affords the [trial] judge latitude, and our appellate second-sight will not reverse unless we are persuaded that the [trial] judge's decision was clearly against the logic and effect of the circumstances before the court.'" *Id.* (quoting *Plohg v. NN Investors Life Ins. Co.*, 583 N.E.2d 1233, 1238–39 (Ind.Ct.App. 1992), *trans. denied*). In considering whether to permit a late amendment to a witness list, the trial court considers the danger of surprise or prejudice to the opponent and the goal of doing justice to the merits of the claim. *See Radio Dist. Co., Inc. v. National Bank and Trust Co. of South Bend*, 489 N.E.2d 642, 646 (Ind.Ct.App.1986). The trial court also considers whether there has been bad faith or willfulness in failing to comply with the court's existing order. *See id.*

In this case, just weeks prior to trial, Bridges underwent three laser treatments in an effort to eliminate the scarring on her hand. And Bridges provided Metromedia with copies of those medical records and related charges within just a few weeks of trial. Thus, in response to Bridges' objection to Hojnacki's testimony, Metromedia asserted that "the reason that [Hojnacki was] being called [was] because there [was] this additional medical treatment[.]" But Bridges argued that Metromedia knew all along that she was alleging permanent injuries and should have anticipated the need for Hojnacki's testimony. The trial court ruled as follows:

> Well, I permitted [Bridges] to introduce this additional medical treatment [laser treatments] because [she] testified that this was an ongoing problem. And I could see where that was a surprise to

---

3. The pretrial order provided in relevant part as follows:

2. DEFENDANT'S WITNESSES may include ... [a]ny and all impeachment and/or rebuttal witnesses not determined at this time;

The defendant reserves the right to supplement, correct or amend this list of witnesses prior to the final pretrial conference.

3. In the event there are other witnesses to be called at the trial, their names and addresses and the general subject matter of their testimony will be reported to opposing counsel, with copy to the Court, at least ten (10) days prior to trial. Such witnesses may be called at trial only upon leave of Court. *This restriction shall not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial.*

(Emphasis added).

[Metromedia] and I think in fairness to them, I ought to let another witness come in to testify as to what that witness may have observed about the hand at a time during which this was going on. The objection of [Bridges] with regard to this witness is overruled. I'll permit her to testify.

We think that the trial court's reasoning is sound. Moreover, Bridges has not demonstrated how she was prejudiced by Metromedia's failure to identify Hojnacki as a witness prior to trial. On direct examination, Metromedia's counsel only asked Hojnacki six questions, and her responses were concise. Bridges' counsel vigorously cross-examined Hojnacki and subsequently recalled Bridges to the stand to explain that she had used makeup to cover her scars the morning of the parties' mediation. Bridges has not demonstrated that the trial court abused its discretion when it permitted Hojnacki to testify.

Affirmed.

BAKER, J., and MAY, J., concur.