ATTORNEYS FOR APPELLANTS
Donald K. McClellan
McClellan, McClellan & Arnold
Muncie, Indiana

ATTORNEYS FOR APPELLEE
P. Gregory Cross
The Cross Law Firm, P.C.
Muncie, Indiana

John T. Cook
Cook & Welch
Winchester, Indiana

## In the
## Indiana Supreme Court

No. 18S04-0409-CV-430

GENE LASATER AND CAROLYN LASATER,

*Appellants (Respondents below),*

v.

DONALD HOUSE, SR., AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
OPAL M. PULLEN, DECEASED, ET AL.,

*Appellees (Petitioners below).*

Appeal from the Delaware Circuit Court 4, No. 18C04-0104-CP-43
The Honorable Peter D. Haviza, Special Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 18A04-0305-CV-223

**January 31, 2006**

**Rucker, Justice.**

The question presented is whether in a will contest the hearsay statements of a testator are admissible to prove undue influence. We conclude they are not.

**Background and Procedural History**

In May 1994, Opal Pullen, a widow with no children, executed her last will and testament leaving $1,000 each to two charitable organizations and $2,000 each to five family members, including her nephew Donald House. Pullen left the rest and residue of her estate, which included a 120-acre farm, to her neighbors, Gene and Carolyn Lasater. The Star Trust Company was named as personal representative. Pullen also executed a power of attorney naming David A. Vannatter, a local banker and family friend, as her attorney-in-fact.

In January 1998, Pullen revoked Vannatter's power of attorney and appointed her nephew House in his stead. Thereafter, in February 1998, Pullen revoked her first will and executed a second will. She again left $1,000 each to two charitable organizations. But this time she bequeathed $20,000 each to five family members, including House, and left only half of her farm to the Lasaters. The rest and residue of her estate was bequeathed to four family members. House was named personal representative of Pullen's estate.

Pullen died in January 2001 at the age of ninety-one, and her second will was admitted to probate. The Lasaters filed a complaint against House and other beneficiaries (together "the Estate"), alleging that Pullen's second will was invalid because, "at the time of the execution of said Will, Opal M. Pullen was incompetent by reason of unsoundness of mind and/or was under undue influence or duress at the time of the execution of said will." Appellant's App. at 20. During discovery, several witnesses testified that Pullen had made statements about her relationship with House as well as the Lasaters concerning her estate plans. More specifically, (1) Pullen's former insurance agent stated Pullen told him that she did not want House to have anything; (2) one of Pullen's former caretakers stated Pullen told her that she was good friends with the Lasaters, that she was never close to House, and that it was House's idea to give a family member her power of attorney; (3) another of Pullen's former caretakers stated that the Lasaters were Pullen's longtime friends; (4) Pullen's former attorney-in-fact stated that Pullen

2

told him that she was afraid of House and that she was going to have to change her power of attorney to keep peace in the family; and (5) Pullen's former hairdresser stated that Pullen had always said that the Lasaters would be heirs to her farm and house, but that Pullen said she changed her will against her wishes because House was family. Br. of Appellants at 4-6. The Lasaters also deposed two expert witnesses, William Fatout, a probate attorney, and Dr. Thomas Murray, a licensed psychologist. Both opined that House exerted undue influence over Pullen.

A jury trial was originally scheduled for November 12, 2002, and a few weeks before that time the Estate filed a motion in limine to prohibit the Lasaters from presenting evidence or eliciting testimony concerning statements Pullen may have made evidencing "the existence of undue influence upon her by other persons." The Estate also filed a motion to preclude the testimony of attorney Fatout and Dr. Murray on the grounds that their opinions were comprised of inadmissible legal conclusions, did not meet the criteria of Indiana Rules of Evidence 702 and 704, would not assist the jury, and were unreliable.

Thereafter in March 2003 the trial court granted the Estate's motion and entered an order that dictated in relevant part: "such evidence [the hearsay statements of various witnesses] upon the issue of undue influence of the testator, Opal M. Pullen, is not admissible under Indiana law and shall not be introduced in a trial upon the issue of undue influence upon the testator, Opal M. Pullen, deceased." Appellants' App. at 16.[1] The trial court also entered a separate order precluding the Lasaters from presenting the opinion testimony of attorney Fatout and Dr. Murray. The Lasaters pursued an interlocutory appeal. Affirming in part and reversing in part the judgment of the trial court, the Court of Appeals held that the trial court correctly excluded the expert opinion testimony. With respect to the challenged hearsay statements, the Court held that they "are relevant to Pullen's state of mind at the time she executed her second will" and

---

[1] In its order excluding Pullen's statements, the trial court listed page numbers from various witnesses' depositions and concluded, "such evidence . . . is not admissible . . . ." Rather than addressing each of the statements contained on those listed pages, we limit our discussion to the specific statements that the Lasaters set forth in their brief on appeal.

thus "are admissible under Rule 803(3)." Lasater v. House, 805 N.E.2d 824, 833 (Ind. Ct. App. 2004). Having previously granted transfer, we now affirm the trial court's judgment.[2]

**Discussion**

In actions to contest and set aside the probate of a will, the grounds usually asserted are some combination of unsoundness of mind, fraud, duress, undue influence, or that the will was unduly executed. See Indiana Code § 29-1-7-17. The nature of the challenge to the will's validity largely dictates the form of the evidence allowed to be introduced. For example, although hearsay in the contest of a will may be introduced for some purposes, it has long been the law in this jurisdiction that the declarations or statements of a testator, made at any time other than when engaged in the execution of the will, are not admissible for the purpose of showing that the will was procured by undue influence and cannot be considered in determining that issue. Allman v. Malsbury, 224 Ind. 177, 65 N.E.2d 106, 114 (1946); Loeser v. Simpson, 219 Ind. 572, 39 N.E.2d 945, 946 (1942); Crane v. Hensler, 196 Ind. 341, 146 N.E. 577, 581 (1925); Emry v. Beaver, 192 Ind. 471, 137 N.E. 55, 56 (1922); Ditton v. Hart, 175 Ind. 181, 93 N.E. 961, 965 (1910); Todd v. Fenton, 66 Ind. 25, 32 (1879); Hayes v. West, 37 Ind. 21, 24-25 (1871). This is the rule in the overwhelming majority of jurisdictions. See R.E. Heinselman, Annotation, Admissibility of Declarations of Testator on Issue of Undue Influence, 79 A.L.R. 1447 (2004) (collecting cases). See also 79 Am. Jur. 2d Wills § 433 (2002) ("While declarations of the testator are admissible to show the testator's state of mind as relevant to a showing of the testator's susceptibility to undue influence, such declarations are not competent evidence to show acts of undue influence on the part of the beneficiary.").

The underlying basis for this rule is that in the case of undue influence, the declarations or statements are used as direct proof that the fact asserted did occur. Ramseyer v. Dennis, 187 Ind. 420, 119 N.E. 716, 718-19 (1918). However, these declarations or statements cannot be regarded as evidence of previous occurrences, unless they come within one of the recognized exceptions to the hearsay rule. As one treatise explains, "The testator's assertion that a person,

---

[2] We summarily affirm that portion of the Court of Appeals' opinion concluding the trial court properly excluded the testimony of attorney Fatout and Dr. Murray.

named or unnamed, has procured him by fraud or by pressure to execute a will or to insert a provision, is plainly obnoxious to the hearsay rule, if offered as evidence that the fact asserted did occur. . . .   For this reason such declarations of a testator are by most courts regarded as inadmissible."  6 Wigmore, Evidence § 1738 (Chadbourn rev. 1976).

By contrast, where testamentary capacity is at issue, for example upon a claim that the testator was of unsound mind at the time she executed her will, the testator's declarations at that time are admissible because the conditions of the mind are revealed to us only by external manifestations, of which speech is one.  See Todd, 66 Ind. at 32.  In like fashion the state of mind at one time is admissible of its state at other times not too remote, because the mental conditions have some degree of permanency.  Dyer v. Dyer, 87 Ind. 13, 19-20 (1882), Bower v. Bower, 142 Ind. 194, 41 N.E. 523, 524 (1895).  Hence, in an inquiry concerning the testator's state of mind, before or pending the exertion of the alleged influence, the testator's words, as well as the testator's behavior, may be shown for the purpose of casting light on the mental condition that produced them.  See Rice v. Rice, 92 Ind. App. 640, 175 N.E. 540, 541 (1931) (noting the "courts have recognized and adopted an exception to the hearsay and remote rule, which permits all utterances and conduct of the testator to be brought to the attention of the court or jury trying the issue, not for the purpose of proving the truth of the particular declarations or statements, but from them the condition of the testator's mind at various times for use as a basis for inferring his condition at the time the instrument was executed") (citing Ramseyer, 119 N.E. at 718).[3]

In this case the Estate argues, and the Court of Appeals agreed, that the challenged statements are admissible under Ind. R. Evid. 803(3).  However this provision is a state-of-mind

---

[3] This exception has now been codified as Indiana Rule of Evidence 803(3) which provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness.
> . . . .
> (3) Then Existing Mental, Emotional, or Physical Condition.  A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it related to the execution, revocation, identification, or terms of declarant's will.

5

exception to the hearsay rule. And the issue presented to the trial court was not whether Pullen's statements are admissible as evidencing her state of mind, but whether those statements are admissible for the purpose of proving undue influence. Indeed the trial court's order was very specific in that regard: "the Court, pursuant to Ind. Rule of Evidence 104, now determines that such evidence [the hearsay statements of various witnesses] *upon the issue of undue influence* of the testator, Opal M. Pullen, is not admissible under Indiana law and shall not be introduced in trial *upon the issue of undue influence* upon the testator, Opal M. Pullen, deceased." Appellants' App. at 16 (emphasis added). We acknowledge that on some level "[u]ndue influence necessarily involves a state of mind. . . . [And it] may be brought about by either mental or physical coercion, fear, a desire for peace, or a feeling which one is unable to resist." Workman v. Workman, 113 Ind. App. 245, 46 N.E.2d 718, 726 (1943). Still, a statement or declaration of a testator that is considered classic hearsay is not transformed into non-hearsay simply because it tangentially involves a state of mind. Whether and to what extent the challenged hearsay statements in this case are admissible for other purposes, including Pullen's "incompetence by reason of unsoundness of mind" – one of the grounds on which the Lasaters challenge Pullen's will – may be determined by the trial court at the appropriate time. However, this was not an issue upon which the trial court rendered judgment.

### Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.

6