Joseph GAST, Emmett Fitzgerald, Patty Egolf, Appellants–Plaintiffs,

v.

John Thomas HALL, Individually and John Thomas Hall, as Executor of the Will of Joseph Fitzgerald, Appellees–Defendants.

No. 64A03–0511–CV–531.

Court of Appeals of Indiana.

Dec. 11, 2006.

Terry K. Hiestand, Sarah A. Lawson, Hiestand Law Office Chesterton, IN, Attorneys for Appellants.

Maggie L. Smith, Locke Reynolds, LLP, Greg S. Gordon, Dale & Eke, P.C., Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Joseph Gast ("Gast"), Emmett Fitzgerald ("Fitzgerald"), and Patty Egolf ("Egolf") (collectively "Plaintiffs") appeal the trial court's grant of summary judgment in favor of defendant John Hall ("Hall"), individually and as the Executor of the Will of Joseph Fitzgerald, in their action to contest Joseph Fitzgerald's 2002 will. In ruling on the motion for summary judgment, the trial court found that portions of one witness's affidavit violate the "privilege and confidentiality of mediation" and that the affidavit of an attorney who did work for Joseph Fitzgerald but did not draw his 2002 will violates the attorney-client privilege. We conclude that Alternative Dispute Resolution Rule 2.11, concerning mediation confidentiality, does not bar evidence offered to prove that a person lacked testamentary capacity, because such evidence is offered for a purpose other than to prove liability for or invalidity of the claim being mediated or its amount. Furthermore, the "testamentary exception" to the attorney-client privilege, which allows the attorney who drafted an executed will to reveal client communications after the client's death in a suit between the testator's heirs, devisees, or other parties who claim under him or her, does not apply to attorneys who communicated with the testator before the testator's death but played no role in drafting the executed will. Having resolved these evidentiary issues, we reverse the trial court's grant of summary judgment in favor of Hall on Plaintiffs' claims that Joseph Fitzgerald lacked testamentary capacity when he executed his 2002 will and that Hall exerted undue influence over Uncle Joe. Therefore, we remand this cause to the trial court for further proceedings consistent with this opinion.

### Facts and Procedural History[1]

John Fitzgerald ("Uncle John") and Joe Fitzgerald ("Uncle Joe") were brothers

---

1. Hall has filed a motion to file the affidavit of Richard Rupcich, one of his attorneys at the

who never married and lived together all their lives on a farm owned by Uncle John. Uncle John and Uncle Joe raised Hall, their nephew, in their house for much of Hall's childhood. After Hall married, he moved into a house owned by Uncle Joe that was located across the street from the house in which he was raised and where Uncle John and Uncle Joe still lived. Hall lived in this house with his wife and children for most of his adult life. According to Hall, he and Uncle Joe had a strained relationship for some time. Uncle Joe executed a will on June 19, 1997 ("1997 will"), under which Hall was not a beneficiary.

Uncle John died on March 9, 2002, and Hall filed and admitted to probate a will executed by Uncle John on April 18, 1994, which left all of Uncle John's property to Hall. Uncle Joe filed a will contest ("First Will Contest"), alleging that the 1994 will was superceded by a will executed on March 7, 1995, which left all of Uncle John's property to Uncle Joe, but if Uncle Joe did not survive Uncle John by thirty (30) days, then to Hall. As part of this will contest, Uncle Joe and Hall attended a full-day mediation on September 11, 2002. Also in attendance at the mediation were John Casson ("Casson"), who had been helping Uncle Joe with his business matters since 2001, and Attorney Herbert Douglas ("Attorney Douglas"), whom Uncle Joe had retained to represent him in the will contest. No agreement was reached during the mediation session.[2] However, after the mediation the tension between Hall and Uncle Joe subsided. They continued to work to settle the First Will Contest, and Hall began helping Uncle Joe with his day-to-day activities, including driving him places he needed to go.

At some point, Uncle Joe informed Attorney Douglas that he wished to leave all of his assets to Hall. Thereafter, on November 22, 2002, Attorney Douglas's partner, Brian J. Hurley, filed a Petition for Appointment of Guardian Ad Litem, asking the trial court to appoint a guardian to advise and assist Uncle Joe in determining his best interests in the First Will Contest. The trial court granted the petition, finding that Uncle Joe was "not adequately represented" and needed assistance "in determining his best interests." Appellants' App. p. 106. That same day, Hall drove Uncle Joe to the office of Attorney Dan Berning ("Attorney Berning"), but Hall did not go into the office. Uncle Joe's Client Information Sheet states that Hall referred Uncle Joe to Attorney Berning. Attorney Berning drafted a new will for Uncle Joe that left all of Uncle Joe's property to Hall and named Hall as personal representative, which Uncle Joe signed three days later on November 25, 2002 ("2002 will"). Hall then made an appointment for Uncle Joe to be evaluated by psychologist Stanley Lelek ("Lelek"). Hall drove Uncle Joe to Lelek's office on November 27, 2002, and was present in the room during the evaluation. Uncle Joe told Lelek that he was undergoing the evaluation because "he executed a WILL that may (in the future) be contested." *Id.* at 60. Lelek concluded that Uncle Joe suffered short-term memory deficiency but "ha[d] the capacity to take care of himself." *Id.*

---

trial court level, under seal with this Court for the reason that it contains "attorney-client privileged matters." Appellees' Verified Reply in Support of Their Motion to File Affidavit Under Seal p. 2. We find that nothing in the affidavit falls within the attorney-client privilege. Therefore, we deny Hall's motion.

**2.** As of the time of the filing of Appellants' Brief on January 3, 2006, the First Will Contest was still pending.

Uncle Joe died in January 2003. Hall submitted the 2002 will prepared by Attorney Berning to the trial court and was appointed personal representative of Uncle Joe's estate. Plaintiffs, relatives of Uncle Joe and beneficiaries under the 1997 will, filed a will contest ("Second Will Contest"), alleging that the 2002 will is invalid because: (1) Uncle Joe was of unsound mind; (2) Hall imposed undue influence on Uncle Joe; (3) Uncle Joe executed the will under duress; or (4) the execution of the will was obtained by fraud. *See id.* at 22–23.

■ Hall filed his Motion for Summary Judgment and Designation of Evidence in the Second Will Contest on November 26, 2003. In response, Plaintiffs filed, among other documents, the affidavits of Casson and Douglas and excerpts of the deposition of Hall. Hall moved to strike the affidavits of Casson and Douglas, arguing that they violate: (1) the privilege and confidentiality of mediation; (2) the attorney-client privilege; (3) the Indiana Rules of Professional Conduct; and (4) Indiana Trial Rule 56(E). Hall also moved to strike the portions of his own deposition that Plaintiffs had designated, contending that he was incompetent to testify according to Indiana's Dead Man's Statutes.[3] *See* Ind. Code §§ 34–45–2–4 & 5.

On April 6, 2004, the trial court held a hearing on Hall's motion for summary judgment and his motion to strike Plaintiffs' designated evidence. In its Findings, Order and Judgment on August 2, 2005, the trial court granted Hall's motion to strike as to Paragraphs 6–11 of Casson's affidavit, which provide:

**3.** "The Dead Man's Statutes guard against false testimony by a survivor by establishing a rule of mutuality, wherein the lips of the surviving party are closed by law when the lips of the other party are closed by death." *State Farm Life Ins. Co. v. Fort Wayne Nat. Bank,* 474 N.E.2d 524, 526 (Ind.Ct.App.1985).

6. The reason [Casson] went to the mediation was to provide information on the assets owned by [Uncle Joe]; his accounts, real estate, and personal property. At the time of the mediation, [Uncle Joe] was unaware of the extent and value of his holdings and the value of money. At times during the mediation [Uncle Joe] made statements that indicated he did not understand the extent and value of his holdings and the value of money.

7. At the beginning of the mediation everyone met with the mediator in the same room. [Hall] sat across the table from [Uncle Joe]. Afterward, as the parties went to their respective rooms to continue the mediation, [Uncle Joe] asked [Casson] if [Hall] was there. [Casson] had to tell [Uncle Joe] that [Hall] was seated across from him at the table. On the day of the mediation on September 11, 2002, [Uncle Joe] did not even recognize [Hall].

8. During the course of the mediation [Casson] heard discussed many issues regarding the possible outcomes of the will contest.

9. At the time of the mediation it was clear that [Uncle Joe] was not able to understand the ramifications of the law suit and was having difficulty understanding the options presented, the potential affects on him, and the nature of the mediation.

10. [Uncle Joe] mentioned, on a number of occasions, a story about a horse that [Hall] purchased with

"[T]he purpose of the Dead Man's Statutes is to put the surviving party on equal footing with the decedent with respect to matters that occurred during the decedent's lifetime[.]" *J.M. Corp. v. Roberson,* 749 N.E.2d 567, 571 (Ind.Ct.App.2001).

money [Uncle Joe] loaned him. [Uncle Joe] gave the impression that this matter had recently occurred. The matter actually occurred 20 years ago. Although a series of offers of settlement were communicated to [Uncle Joe], he kept wanting to discuss this old dispute over the horse.

11. [Uncle Joe], failed to be able to comprehend the circumstances regarding the will contest and how it affected him despite a number of attempts to explain the issues involved. Offers of settlement were provided on a couple of occasions, but [Uncle Joe] would neither commit to, counter, nor decline the offers.

Appellants' App. p. 83–84. The trial court found that the paragraphs "either violate the privilege and confidentiality of mediation or are merely conclusory and should not be considered[.]" *Id.* at 17. The trial court also agreed to strike all of Attorney Douglas's affidavit, in which Attorney Douglas stated that Uncle Joe "failed to comprehend the situation regarding the will contest and how it affected him" and "could not determine his own best interests." *Id.* at 104–05. The trial court found Attorney Douglas's affidavit to be "both conclusory and violative of the attor-

ney-client privilege now held by [Hall]." *Id.* at 17–18. Finally, the trial court agreed to strike part of Hall's deposition testimony, stating that it would "only consider those portions of Hall's testimony which are relevant to [Uncle Joe's] mental capacity." *Id.* at 18.

In the same order, the trial court granted summary judgment in favor of Hall on all of Plaintiffs claims, thereby upholding the validity of the 2002 will. *See id.* at 17–21. Plaintiffs now appeal.

## Discussion and Decision

On appeal, Plaintiffs contend that the trial court erred in granting summary judgment in favor of Hall on the issues of testamentary capacity and undue influence, claiming that they presented sufficient evidence to create genuine issues of material fact on both issues. Plaintiffs also raise several claims regarding the trial court's exclusion of certain pieces of designated evidence. Because the evidentiary issues impact our summary judgment analysis, we address them first.

### I. Admission of Evidence

 Plaintiffs first contend that the trial court improperly refused to admit into evidence portions of Casson's affidavit and all of Attorney Douglas's affidavit.[4] We typically review rulings admitting or

4. Plaintiffs make two other claims regarding admission of evidence. First, they argue that the trial court erred in excluding Hall's deposition testimony (except as that testimony was relevant to Uncle Joe's testamentary capacity). *See* Appellants' App. p. 18 (order excluding Hall's testimony). However, Plaintiffs do not rely on that testimony in seeking to establish issues of fact in the argument section of their brief. For purposes of this appeal, then, any error in the exclusion of such testimony was harmless.

Second, Plaintiffs contend that when the trial court granted Hall's motion to strike certain evidence, it should have granted them leave "to file additional affidavits." *Id.* at 14.

Plaintiffs requested this relief in a motion to correct error. We review a trial court's decision to grant or deny a motion to correct error for an abuse of discretion. *Carter–McMahon v. McMahon,* 815 N.E.2d 170, 174 (Ind.Ct.App.2004). Here, Plaintiffs fail to explain why they could not have produced these "additional affidavits" before the trial court granted summary judgment; that is, they do not contend that this is newly discovered evidence. If Plaintiffs had evidence supporting their claims, they should have designated it along with the rest of their evidence. The trial court did not abuse its discretion in denying Plaintiffs' motion to correct error.

excluding evidence for an abuse of discretion. *Hirsch v. State*, 697 N.E.2d 37, 40 (Ind.1998). However, a ruling is reviewed *de novo* when it turns on the interpretation of a rule of evidence. *Stahl v. State*, 686 N.E.2d 89, 91 (Ind.1997). Here, the trial court's ruling as to Casson's affidavit rested on its interpretation of Alternative Dispute Resolution Rule 2.11 ("ADR Rule 2.11"), regarding mediation confidentiality, which is based on Indiana Evidence Rule 408, and its ruling as to Attorney Douglas's affidavit rested on its interpretation of the attorney-client privilege, an evidentiary privilege. Each of these rulings presents a question of law for this Court, so we apply a *de novo* standard of review.

### A. Affidavit of Casson

■ The trial court refused to consider six paragraphs of Casson's affidavit, finding that they "either violate the privilege and confidentiality of mediation or are merely conclusory and should not be considered[.]" Appellants' App. p. 17. Plaintiffs contend that both findings are incorrect. We address each finding in turn.

Regarding the trial court's conclusion that paragraphs 6–11 of Casson's affidavit violate the privilege and confidentiality of mediation, Plaintiffs contend that the court misinterpreted ADR Rule 2.11, which provides, in pertinent part:

**Confidentiality**

Mediation shall be regarded as settlement negotiations as governed by Ind.Evidence Rule 408. For purposes of reference, Evid.R. 408 provides as follows:

**Rule 408. Compromise and Offers to Compromise**

■ *Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim, which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. Compromise negotiations encompass alternative dispute resolution.*

The rationale for this rule "is that the law favors out of court compromises and that a party who yields certain points in an effort to effectuate such a compromise should not be prejudiced if those efforts fail." *Bridges v. Metromedia Steakhouse Co.*, 807 N.E.2d 162, 166 (Ind.Ct.App.2004) (citing *Brademas v. Real Estate Dev. Co.*, 175 Ind.App. 239, 242, 370 N.E.2d 997, 999 (1977)). The rule does not require exclusion when the evidence is offered for a purpose other than "to prove liability for or invalidity of the claim or its amount." Ind. Alternative Dispute Resolution Rule 2.11.

Here, the excluded paragraphs of Casson's affidavit regard observations he made during the mediation session in the First Will Contest. However, those paragraphs are not now being offered "to prove liability for or invalidity of the claim or its amount" in the First Will Contest. That is, they are not being offered to validate Uncle Joe's claims regarding Uncle John's wills. Rather, they are being offered for the completely distinct purpose of proving Uncle Joe's testamentary capacity, or lack thereof, vis-à-vis the Second Will Contest. Because paragraphs 6–11 of Casson's affidavit are being offered for a purpose other

than to prove liability for or invalidity of the claims being litigated in the First Will Contest, the trial court erred in excluding the evidence based on ADR Rule 2.11. *See Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183, 1194 (10th Cir.1992) ("Here, the evidence related to an entirely different claim—the evidence was not admitted to prove the validity or amount of the 'claim under negotiation.' ... Thus, Rule 408 did not bar this evidence because it related to settlement discussions that involved a different claim than the one at issue in the current trial.").

 The trial court also excluded those paragraphs because it found them to be "merely conclusory." Appellants' App. p. 17. Indiana Trial Rule 56(E) provides, in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Discussing that rule, our Supreme Court has stated, "Conclusory statements not admissible at trial should be disregarded when determining whether to grant or deny a summary judgment motion." *Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind.1990). In this case, the trial court properly excluded Paragraphs 6 and 9 of Casson's affidavit as being conclusory.

Paragraph 6 provides:

6. The reason [Casson] went to the mediation was to provide information on the assets owned by [Uncle Joe]; his accounts, real estate, and personal property. At the time of the mediation, [Uncle Joe] was unaware of the extent and value of his holdings and the value of money. At times during the mediation [Uncle Joe] made statements that indicated he did not understand the ex-

tent and value of his holdings and the value of money.

Appellants' App. p. 83. This paragraph includes no facts to support Casson's conclusion that Uncle Joe "did not understand the extent and value of his holdings and the value of money" at the time of the mediation. Likewise, we agree that Paragraph 9 is merely conclusory:

9. At the time of the mediation it was clear that [Uncle Joe] was not able to understand the ramifications of the law suit and was having difficulty understanding the options presented, the potential affects on him, and the nature of the mediation.

*Id.* at 84. Again, Casson offers no facts to support his conclusion that "it was clear" that Uncle Joe was unable to understand the ramifications of the lawsuit.

We cannot agree with the trial court, however, that the other paragraphs are merely conclusory. Paragraph 7 alleges that Uncle Joe was unable to identify his own nephew, Hall, during the mediation; Paragraph 8 simply states that Casson was privy to discussions regarding the First Will Contest during the mediation; Paragraph 10 alleges that during the mediation, Uncle Joe was confused about the timing of Hall's purchase of a horse with money loaned to him by Uncle Joe; and Paragraph 11 claims that Uncle Joe failed to comprehend the circumstances regarding the will contest because he "would neither commit to, counter, nor decline" offers of settlement made during the mediation. *Id.* All of these paragraphs concern specific facts regarding the mediation that are relevant to Uncle Joe's mental state and therefore should not have been excluded as being conclusory.

**B. Affidavit of Attorney Douglas**

 Plaintiffs also argue that the trial court incorrectly found that Attorney

Douglas's affidavit violates the attorney-client privilege. We cannot agree.

 "The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Swidler & Berlin v. United States*, 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). "The privilege is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* (internal quotation omitted). The privilege generally excludes testimony of communications between a client and her attorney regarding the preparation of a will. *Brown v. Edwards*, 640 N.E.2d 401, 404 (Ind.Ct.App.1994), *trans. denied.* The privilege survives even after the death of the client. *Buuck v. Kruckeberg*, 121 Ind.App. 262, 271, 95 N.E.2d 304, 308 (1950).

 However, an exception to the posthumous survival of the privilege exists when "a controversy arises concerning the validity of the will or between the claimants under the will[.]" *Briggs v. Clinton County Bank & Trust Co. of Frankfort, Ind.*, 452 N.E.2d 989, 1012 (Ind.Ct.App. 1983). Stated succinctly, the "testamentary exception" is as follows: "[C]ommunications by a client to the attorney who drafted his or her will, concerning the will and transactions leading to its execution, generally are not, after the client's death, protected as privileged communications in a suit between the testator's heirs, devisees, or other parties who claim under him or her[.]" 81 Am.Jur.2d *Witnesses* § 374 (2004). *See also Estate of Meyer v. Burke*, 747 N.E.2d 1159, 1166 n. 4 (Ind.Ct.App. 2001) (noting that testamentary exception is limited to evidence pertaining to preparation of will or other similar documents), *trans. denied.*

Plaintiffs ask that we extend this narrow exception to the testimony of an attorney who had contact with the client during the time leading up to the execution of the will, even if that attorney was not involved in the preparation of the will, in this case, Attorney Douglas. Plaintiffs claim that "[t]he logic and reasoning behind the exception to the attorney-client privilege for claimants claiming through the same testator apply to this case[.]" Appellants' Br. p. 9. We are not persuaded.

The Connecticut Supreme Court recently rejected a similar request, holding: "When the communications between a decedent and his attorney do not result in an executed will, the communications do not fall within the exception to the attorney-client privilege and thus are confidential." *Gould, Larson, Bennet, Wells and McDonnell, P.C. v. Panico*, 273 Conn. 315, 869 A.2d 653, 655 (2005). The Court explained the distinction between communications with attorneys who prepare executed wills and attorneys who do not as follows:

> When a decedent executes his will, he knows that it will be made public and established as his will in court before it can become effective. If the will does not reflect the testator's will, but rather that of another who induced him by undue influence to make it, we impute to the decedent an interest that he would not want such a will to be accepted as his own. If we were to protect his otherwise privileged communications under such circumstances, we would be helping to perpetuate the deceit and fraud, contrary to the decedent's interest. Therefore, we allow the attorney who prepared the executed will to disclose all that he knows concerning the testator's state of mind. When the communications do not, however, result in an executed will, the decedent does not assume the attorney's file, notes or memory will become part of any court

proceedings and therefore we cannot assume that the decedent expected his communications to be made public. In short, in the absence of an executed will, we do not infer that the decedent intended to waive those communications to effectuate his intent. Therefore, the established exception, which is consistent with the purposes of the privilege, should not be construed or applied so as to defeat its purpose.

*Id.* at 659. Plaintiffs have failed to persuade us to hold otherwise. Here, the evidence Attorney Douglas seeks to disclose does not pertain to the preparation of either of Uncle Joe's wills, and therefore it does not fall within the testamentary exception to the attorney-client privilege.

■ Plaintiffs also contend that the attorney-client privilege does not apply here because Attorney Douglas's affidavit contains his "personal observations" rather than "the contents of any communications." Appellants' Br. p. 10. We cannot agree. As Hall points out, Attorney Douglas's affidavit is based on things he "discussed" with Uncle Joe, Appellants' App. p. 104, how he "instructed" Uncle Joe, *id.*, things that Uncle Joe "mentioned" to him, *id.*, and his attempts to "explain" the First Will Contest to Uncle Joe, *id.* The attorney-client privilege "applies to all communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities." *Penn Cent. Corp. v. Buchanan,* 712 N.E.2d 508, 515 (Ind.Ct.App.1999), *reh'g*

*denied, trans. denied.* Plaintiffs have failed to convince us that discussing, instructing, mentioning, and explaining do not constitute communications.[5] The trial court properly excluded Attorney Douglas's affidavit based upon the attorney-client privilege.[6]

Having resolved the evidentiary issues, we now turn to a discussion of the merits of Plaintiffs' claims.

## II. Summary Judgment

Plaintiffs contend that the trial court erred in granting summary judgment on their claims that Uncle Joe lacked testamentary capacity when he executed the 2002 will and that Hall exerted undue influence over Uncle Joe in relation to the 2002 will.[7] In the appellate review of a grant of summary judgment, we apply the same standard as the trial court. *Auto–Owners Ins. Co. v. Harvey,* 842 N.E.2d 1279, 1282 (Ind.2006). Summary judgment "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (quoting Ind. Trial Rule 56(C)). During our review, all facts and reasonable inferences drawn from them are construed in favor of the nonmoving party. *Id.* We address each of Plaintiffs' claims in turn.

### A. Uncle Joe's Testamentary Capacity

■ Plaintiffs contend that they presented sufficient evidence to create a genuine issue of material fact as to whether Uncle Joe had testamentary capacity when he executed the 2002 will. Looking to the

---

5. Likewise, there is no argument or indication that these communications occurred within earshot of any third person, in which case they would not be protected by the privilege. *See Shanabarger v. State,* 798 N.E.2d 210, 215–16 (Ind.Ct.App.2003), *trans. denied.*

6. Because we find that the trial court properly excluded Attorney Douglas's affidavit based

upon the attorney-client privilege, we need not address the propriety of the trial court's conclusion that the affidavit is also inadmissible as being conclusory.

7. The trial court also granted summary judgment to Hall on Plaintiffs' claims of fraud and duress. Plaintiffs do not challenge those conclusions on appeal.

evidence that the trial court did consider, along with Paragraphs 7, 8, 10, and 11 of Casson's affidavit, which we found above the trial court should have considered, we agree with Plaintiffs.

■■■■ We presume that every person is of sound mind to execute a will until the contrary is shown. *Hays v. Harmon*, 809 N.E.2d 460, 464 (Ind.Ct.App.2004), *trans. denied.* To rebut this presumption, a party must show that the testator lacks mental capacity at the time of executing his will to know: (1) the extent and value of his property; (2) those who are the natural objects of his bounty; and (3) their deserts, with respect to their treatment of and conduct toward him. *Id.* at 464–65. While it is the testator's soundness of mind at the time of executing the will that is controlling, evidence of the testator's mental condition prior to the date of execution is admissible, as it relates to the testator's mental state when executing his will. *Id.* at 465. Plaintiffs designated several pieces of evidence tending to show that Uncle Joe lacked testamentary capacity when he executed the 2002 will.

First, the Order Appointing Guardian Ad Litem, dated November 22, 2002, not only states, as the trial court noted, that Uncle Joe was "not adequately represented" in the First Will Contest, Appellants' App. p. 19; the order also states that Uncle Joe "need[ed] a guardian ad litem to assist [him] in determining his best interests" in the First Will Contest, *id.* at 106. The fact that a trial court of this State found on November 22, 2002, that Uncle Joe needed another person to assist him in determining his best interests is evidence that Uncle Joe lacked testamentary capacity when he executed his will three days later, on November 25, 2002.

Second, Plaintiffs introduced Uncle Joe's 1997 will and his 2002 will. Under the 1997 will, Uncle Joe gave none of his property to Hall. Under the 2002 will, he gave all of his property to Hall. Furthermore, at the time of the 2002 will, Hall was Uncle Joe's adversary in the First Will Contest. Our Supreme Court long ago upheld a jury instruction stating that "an unnatural disposition of property by a testator may be considered by the jury in determining the testamentary capacity of such testator." *Davis,* 190 Ind. 173, 125 N.E. at 409. A jury could reasonably find that the disposition of property in Uncle Joe's 2002 will was unnatural or unusual considering the relationship between Uncle Joe and Hall for several years preceding the execution of the will, which could lead to an inference that Uncle Joe lacked testamentary capacity.

Third, Paragraphs 7, 8, 10, and 11 of Casson's affidavit offer further evidence showing that Uncle Joe lacked testamentary capacity. Paragraph 7 alleges that Uncle Joe did not recognize Hall on the day of mediation in the First Will Contest and had to ask Casson if Hall was there, even though Hall had been seated across the table from Uncle Joe. Paragraph 10 states that during the mediation, Uncle Joe was fixated on a story about Hall purchasing a horse using funds loaned to him by Uncle Joe, even though "[t]he matter actually occurred 20 years ago." Appellants' App. p. 84. Paragraph 11 suggests that Uncle Joe did not understand the nature of the First Will Contest, as evidenced by the fact that he failed to commit to, counter, or decline several offers of settlement during the mediation session. Casson's personal observations of Uncle Joe on September 11, 2002, the date of mediation in the First Will Contest, help establish a genuine issue of material fact as to whether Uncle Joe had testamentary capacity when he executed a will on November 25, 2002.

Because there is a genuine issue of material fact as to whether Uncle Joe was of

sound mind when he executed the 2002 will, we reverse the trial court's grant of summary judgment in favor of Hall on the issue of testamentary capacity.

### B. Undue Influence

■ Plaintiffs also argue that the trial court erred in granting summary judgment in favor of Hall on the issue of undue influence. We must agree.

■ Undue influence is defined as "the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." *In re Estate of Wade,* 768 N.E.2d 957, 962 (Ind.Ct.App.2002), *trans. denied.* It is an intangible thing that only in the rarest instances is susceptible of what may be termed direct or positive proof. *McCartney v. Rex,* 127 Ind.App. 702, 706, 145 N.E.2d 400, 402 (1957) ("The difficulty is also enhanced by the fact universally recognized that he who seeks to use undue influence does so in privacy."). As such, undue influence may be proven by circumstantial evidence, and the only positive and direct proof required is of facts and circumstances from which undue influence may reasonably be inferred. *Haas v. Haas,* 121 Ind.App. 335, 344, 96 N.E.2d 116, 120 (1951), *reh'g denied.* "As circumstances tending in a slight degree to furnish ground for inference of fraud or undue influence, it is proper to consider the character of the proponents and beneficiaries, and interest or motive on their part to unduly influence the testator, and facts and surroundings giving them an opportunity to exercise such influence." *Davis v. Babb,* 190 Ind. 173, 125 N.E. 403, 406 (1919). Undue influence is essentially a question of fact that should rarely be disposed of via summary judgment. *See Weiser v. Godby Bros., Inc.,* 659 N.E.2d

237, 239 (Ind.Ct.App.1995); *McCartney,* 127 Ind.App. at 706, 145 N.E.2d at 402.

Here, Plaintiffs designated evidence showing that Hall was not to receive anything under Uncle Joe's 1997 will. However, the 2002 will designated Hall as Uncle Joe's sole beneficiary. While this fact is by no means conclusive on the question of undue influence, it is certainly relevant circumstantial evidence on the issue, especially since Hall himself admits that his relationship with Uncle Joe was strained, at least until two months before Uncle Joe executed the 2002 will. There is also undisputed evidence that Hall spent significant time with Uncle Joe during the months leading up to the execution of the 2002 will, including driving Uncle Joe to Attorney Berning's office. It is apparent, then, that Hall had the opportunity to influence Uncle Joe. Finally, Attorney Berning's client information sheet for Uncle Joe shows that Hall referred Uncle Joe, even though Attorney Berning had never done any work for Uncle Joe before the 2002 will, and Attorney Douglas, Uncle Joe's attorney in the First Will Contest, was not even consulted concerning the 2002 will. This evidence, though circumstantial, is sufficient to create a genuine issue of material fact as to whether Hall exerted undue influence over Uncle Joe regarding the 2002 will. *See Haas,* 121 Ind.App. 335, 96 N.E.2d 116 (upholding jury's finding of undue influence where the alleged influencer benefited under the will, the will was drawn by a lawyer who had not done previous legal work for the decedent, the attorney whom the decedent regularly consulted was ignored in the transaction, and there was considerable evidence indicating that the will was an improbable one "when viewed in the light of the just deserts of the legatees"). We therefore reverse the trial court's grant of

summary judgment in favor of Hall on the issue of undue influence.[8]

### Conclusion

We reverse the trial court's grant of granting summary judgment in favor of Hall on Plaintiffs' claims that Uncle Joe lacked testamentary capacity when he executed the 2002 will and that Hall exerted undue influence over Uncle Joe. Therefore, we remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

DARDEN, J., concurs.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting.

I respectfully dissent.

The portions of the affidavits of Attorney Douglas and John Casson were stricken by the trial court because they contained conclusions and opinions unsupported by specific facts that formed the basis of those opinions. I find that the trial court did not abuse its discretion in its ruling. Although I believe the trial court's decision regarding the conclusory nature of the two affidavits is sufficient to deem them inadmissible, I also agree with the trial court's finding that they contained testimony in violation of Mediation Rule 2.11. As pointed out by the majority opinion, Indiana Evidence Rule 408 provides the starting point for determining whether evidence obtained during mediation is admissible. Ind.Evid.Rule 408 is not limited to excluding only "offers to settle," but also states that *in addition to* the settlement offer itself "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible." Therefore, I would conclude that the exclusion of Rule 408 applies to both settlement offers and all other evidence relating to conduct or statements that occurred during the compromise negotiations.

I also would affirm the trial court's finding that the evidence failed to create a genuine issue of material fact with regard to the testamentary capacity of Uncle Joe. The majority opinion states that the fact that the trial court found in the first will contest on November 22, 2002, that Uncle Joe needed another person to assist him in determining his best interest is evidence that Uncle Joe lacked testamentary capacity when he executed his will on November 25, 2002. I disagree. Attorney Douglas' law partner filed a Petition in the First Will Contest seeking appointment of a guardian ad litem for Uncle Joe. This one page Petition made no reference to Uncle

---

**8.** In support of their undue influence claim, Plaintiffs also direct us to Paragraph 14 of Casson's affidavit, which provides:

> That in December of 2002, affiant talked with [Uncle Joe]. [Uncle Joe] said that he had a meeting with [Hall]. [Hall] told [Uncle Joe] that [Uncle John] had given [Hall] the house in which [Uncle Joe] was living. [Uncle Joe] told affiant that he signed a document that allowed him to continue to live in [Uncle John's] house. [Uncle Joe] said nothing about a will.

Appellants' App. p. 85. Hall responds that this paragraph is based on inadmissible hearsay, referring us to *Lasater v. House*, where the Indiana Supreme Court held:

> [A]lthough hearsay in the contest of a will may be introduced for some purposes, it has long been the law in this jurisdiction that the declarations or statements of a testator, made at any time other than when engaged in the execution of the will, are not admissible for the purpose of showing that the will was procured by undue influence and cannot be considered in determining that issue.

841 N.E.2d 553, 555 (Ind.2006). In light of this rule, we will not consider Paragraph 14 of Casson's affidavit as it relates to Plaintiffs' undue influence claim.

Joe's mental capacity in any way, and merely made a request that a guardian is needed "to determine [Joe's] best interests as it relates to this litigation." This Petition was unverified and did not provide any evidence supporting the relief requested. As it was not served on any of the parties of record, Hall and his counsel did not know a guardian had even been requested.

Furthermore, the trial court granted the Petition the same day it was filed appointing a guardian ad litem without any hearing or any evidence being submitted to support the Petition. Since the Petition did not mention Uncle Joe's mental capacity, I infer that the concern was adequate representation.

The majority opinion states that a jury could reasonably find that the disposition of property in Uncle Joe's 2002 will was unnatural, which could lead to an inference that Uncle Joe lacked testamentary capacity. I disagree. First of all, I see nothing unnatural in leaving his property to his nephew that he helped to raise. It is not unusual for family members to part ways only to reconcile as they mature and grow older. Secondly, I find that because a person wishes to leave property to someone that was formerly disfavored, does not lead to a conclusion that they lack testamentary capacity. It seems to me that this wrongful inference is quite frequently raised as an argument in testamentary capacity cases.

As the majority opinion points outs, in Indiana, there is a high burden that must be met to claim undue influence. The undisputed evidence shows that around the time Uncle Joe executed his Will, he was "strong willed," "very stubborn," and "want[ed] to do things his own way." (App. At 56–57). Also, undue influence must be *directly connected* with the execution of the Will and must operate at the time it was executed. *Arnold v. Parry*, 363 N.E.2d 1055, 1062 (Ind.Ct.App.1977). The undisputed evidence is that Attorney Berning met outside the presence of Hall, who had no involvement in its drafting Uncle Joe's Will. I found no evidence that raised a reasonable inference that Hall interfered with the execution of the Will nor that Uncle Joe's mental state was open to undue influence.

I would affirm the trial court in all respects.