In re: the Matter of the SUPERVISED ESTATE OF Richard ALLENDER, Deceased, Appellant–Petitioner,

v.

Tina ALLENDER, and the Supervised Estate of Christine G. Allender, Deceased, Appellees–Respondents.

No. 07A01–0408–CV–373.

Court of Appeals of Indiana.

Sept. 1, 2005.

Rehearing Denied Nov. 16, 2005.

Michael R. Auger, Auger & Auger, Franklin, for Appellant.

Ben S. Hoff, III, Nashville, for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner, the supervised estate of Richard "Bill" Allender (the Estate), appeals the trial court's Order on Petition to Determine Title of Real Estate in favor of appellee-respondent Tina Allender. Specifically, the Estate raises one dispositive issue: whether the trial court erred in placing upon the Estate the burden of proving that the deeds at issue were invalid. Concluding that there was a fiduciary relationship between Christine and her son, Termite, that raised a presumption of undue influence, we reverse and remand with instructions to enter judgment in favor of the Estates.

## FACTS

Bill and Christine were married with four children: Diane C. Harris, Donald "Donnie" Lee Allender, Sandra Fields, and Richard Bert "Termite" Allender.[1] Bill and Christine owned as tenants in common several hundred acres of real estate in Brown County. On June 7, 1997, Bill and Christine executed wills and created a marital deduction bequest and a trust for the surviving spouse. Under the wills, all four children were treated equally, with the exception that Termite's share went into a trust from which he was to receive monthly payments of $500 until the trust corpus was depleted.

In 1994, Termite pleaded guilty to bank fraud and served five years in federal prison for forging Bill's name on a loan document. While still incarcerated in 1996, Termite married Tina. Termite was released on parole in 1999. One of the conditions of his parole was that he maintain full-time employment. Because he could not obtain other employment, Termite's parents hired him to take care of them, who were both in their seventies and in poor health. Bill had congestive heart failure and was on oxygen, and Christine suffered from a deteriorating liver in addition to other illnesses. Termite attempted several times to convince Bill to sell his property, but Bill repeatedly refused to sell.

On December 15, 1999, Bill and Christine executed a joint power of attorney in favor of Termite permitting Termite to sell

1. Termite was the appellant in a recent case, also written by the author of this opinion, in which we reversed the trial court's grant of summary judgment in favor of the Board of Commissioners of Brown County in Termite's claim against them for false arrest. *Allender v. Huesman*, Cause No. 07A01–0404–CV–152, 820 N.E.2d 182 (Ind.Ct.App. Dec. 13, 2004).

approximately forty acres of their property. Christine also executed an individual power of attorney in favor of Termite, and Bill executed an individual power of attorney in favor of Tina. This power of attorney was not recorded until September 27, 2000. Christine executed another power of attorney in favor of Termite on March 22, 2000.

Bill died on December 23, 1999. Thereafter, Termite began to prevent Christine from having contact with other members of the family. He obtained protective orders so that Donnie, Sandra, and Diane could not contact Christine. At a May 16, 2000, hearing involving Bill's estate, Tina and Termite produced a deed dated December 15, 1999, (December 15 deed) transferring all real property owned by Bill to Christine. Tina had signed Bill's name to the December 15 deed. The notary present at the execution offered to record the deed, but Bill told Christine to hold onto it and file it later in the event that "the kids walk on you." Tr. p. 302. The December 15 deed was not recorded until May 12, 2000.

On January 2, 2000, Christine executed a codicil to her will, terminating the trust for Termite so that he would receive his portion directly without any constraints. On March 6, 2000, Termite took Christine to the law offices of Jack Rogers in Franklin to request that Rogers draft a new will for Christine. Termite explained that he was the youngest member of the family, that he had had problems with criminal law, and that he thought that it was only fair that he be the sole beneficiary of Christine's estate. Rogers told them that he could not draft the will because of conflicts of interest.

Termite then asked attorney Guy Loftman to draft a new will. Termite became upset when Loftman questioned him about his criminal history. Termite then asked Donnie to help him eliminate their sisters from Christine's will by taking Christine to Loftman's office. Donnie refused, and Termite said that if Donnie did not help, then Christine would cut him out of the will too. In spite of his initial reservations, Loftman drafted a new will for Christine that excluded all of her children except Termite. Christine executed the new will on March 9, 2000.

On April 4, 2000, Bill's estate sold the forty acres that were the subject of the joint power of attorney to Termite. Christine did not object to this sale of the property in spite of the December 15 deed; instead, she executed a deed to sell her purported one-half interest in the real property, and Bill's estate executed a deed conveying his one-half interest in the property.

On June 26, 2000, Christine executed a quitclaim deed (June 26 deed) conveying the remaining Allender real estate to herself and to Tina as joint tenants with a right of survivorship. When Christine died on March 17, 2001, Tina became the sole surviving joint tenant and record titleholder of the Allender real estate, excluding all of the other children from inheriting any of the real estate.

On August 25, 2000, Donnie, Diane, and Sandy, as co-executors of Bill's estate, filed a Petition to Determine Title of Real Estate, asking the trial court to determine whether the Allender real estate belonged to Tina or to the Estate. On January 22, 2004, Tina filed a motion for specific findings of fact and conclusions of law. The trial court held hearings on the matter on January 23, 2004, and March 26, 2004. On June 29, 2004, the trial court entered its order in favor of Tina, finding that no presumption of fraud regarding the December 15 deed arose because Bill and Christine did not have a fiduciary relationship, and that no presumption of fraud

regarding the June 26 deed arose because Tina was not in a fiduciary relationship with Christine. The Estates now appeal.

## DISCUSSION AND DECISION

The Estate raises three issues on appeal, one of which we find dispositive. Did the trial court err in placing the burden on the Estate to prove that the December 15 and June 26 deeds were fraudulent?

When a trial court enters findings of fact and conclusions of law, we apply a two-tiered standard of review: first, we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Freese v. Burns*, 771 N.E.2d 697, 700–01 (Ind.Ct. App.2002), *trans. denied.* In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id.* Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. We do not defer to conclusions of law, however, and evaluate them de novo. *Id.*

Certain legal and domestic relationships raise a presumption of trust and confidence as to the subordinate party on the one side and a corresponding influence as to the dominant party on the other. "These relationships include that of attorney and client, guardian and ward, principal and agent, pastor and parishioner, hus-band and wife,[2] parent and child, and there may be others." *Lucas v. Frazee*, 471 N.E.2d 1163, 1166–67 (Ind.Ct.App.1984). In such cases, if the plaintiff's evidence establishes (a) the existence of such a relationship, and (b) that the questioned transaction between those parties resulted in an advantage to the dominant person in whom trust and confidence was reposed by the subordinate, the law imposes a presumption that the transaction was the result of undue influence exerted by the dominant party, constructively fraudulent, and thus void. *Id.* at 1167. At that point, the burden of proof shifts to the dominant party who must demonstrate by clear and unequivocal proof that the questioned transaction was made at arm's length and thus valid. *Id.*

When a judgment is entered in favor of the dominant party, we review not only the question of whether the judgment is contrary to law, but also whether the dominant party's evidence is sufficient to sustain the judgment that the presumption has been rebutted under the clear and unequivocal proof standard. *Id.* We also note that a presumption of fraud attaches to transactions entered into during the existence of a fiduciary relationship regardless of whether the fiduciary actually used his fiduciary powers to complete the transactions. *In re Estate of Wade*, 768 N.E.2d 957, 962 (Ind.Ct.App.2002), *trans. denied.*

In this case, we have the fiduciary relationship of parent and child, but the dominant position is reversed. Whereas the parent is generally the dominant party, Termite, the son, was in the position

---

2. We note that the husband-wife relationship is no longer presumed to be fiduciary. In *Womack v. Womack*, 605 N.E.2d 221, 224–25 (Ind.Ct.App.1992) we held that the law no longer presumes one party in the marital relationship is dominant and the other subor-dinate based solely on gender because contemporary Indiana family law strives to place husbands and wives on equal footing. There is no similar challenge in this case to the fiduciary status of parent-child and attorney-client.

of dominance here by virtue of being his ailing parents' caretaker. *See Outlaw v. Danks*, 832 N.E.2d 1108 (Ind.Ct.App.2005) (finding that a nephew who was his elderly, ailing aunt's sole caretaker had a fiduciary relationship to her, which raised the presumption of undue influence). In addition, both Termite and his wife, Tina, had been made attorneys in fact by Bill and Christine. Petitioner's Ex. 1–4. This placed them in yet another fiduciary relationship with Bill and Christine. *See Villanella v. Godbey*, 632 N.E.2d 786 (Ind.Ct. App.1994) (finding that holding a power of attorney creates a fiduciary relationship). This fiduciary relationship coupled with the transfer of substantial assets raises a presumption of undue influence. *See id.; Estate of Wade*, 768 N.E.2d at 962.

Tina argues that the presumption of undue influence should not affect the December 15 and June 26 deeds because she was not in a fiduciary relationship with Christine. But this contention was belied in *Estate of Wade*, where we recognized that adopting this argument "would allow a fiduciary to escape the presumption of fraud by funneling the benefits of such transactions to his family members. Indiana courts have recognized this danger over the years." 768 N.E.2d at 964. Termite was in a fiduciary relationship with Christine at the time of the December 15 and June 26 deeds; Tina is Termite's wife, and the sum total of the two deeds resulted in Tina having the benefit of owning all of the Allender real estate. Thus, the presumption of undue influence remains, and the trial court erred by not shifting the burden of proof to Tina.

▬ This does not end our inquiry inasmuch as we must still determine whether Tina established by clear and unequivocal proof that the questioned transaction was in fact held at arm's length. Tina contends that she and her husband are the natural objects of Bill and Christine's bounty because Termite provided twenty-four hour care for his parents. While it is true that Termite was their caretaker, he did so for pay because he had to have full-time employment while he was on parole rather than out of familial love. Tr. p. 116. And although a cousin and another caretaker testified that they never saw Termite yell at his parents, tr. p. 162, 259, Donnie, Sandra, and Bill and Christine's granddaughter Brandy testified that they saw Termite yell at and threaten Bill on several occasions. Tr. p. 118–19, 207–09, 357–58.

Tina also points out that Donnie and Sandra did not take care of Bill and Christine, tr. p. 158, 260, but this statement fails to take into account the fact that Termite acquired a protective order against them so that they could not visit Christine from June 2000 until her death. Petitioner's Ex. 13. In addition, the caretaker who testified that she only saw Donnie there two or three times qualified that statement by saying, "I work from eight to four, he could have came [sic] afterwards...." Tr. p. 260. Furthermore, it had been established through a request for admission that Bill had signed the December 15 deed, but a handwriting expert submitted an affidavit stating that Bill's signature was forged on the deed. Appellant's App. p. 157, 219. Only then was the request for admission amended to show that Tina had signed Bill's name at his request. Appellant's App. p. 235. In sum, the evidence that Tina presented falls far short of clear and unequivocal proof that the questioned transactions were in fact held at arm's length. The evidence is, at best, equivocal, so Tina has failed to rebut the presumption of undue influence.

In conclusion, we find that a presumption of undue influence arose in this case because Termite was in a fiduciary rela-

tionship with Bill and Christine at the time of the questioned transactions, and the transactions benefited his family, specifically his wife Tina. We further find that Tina's evidence failed to rebut the presumption.

The judgment of the trial court is reversed and remanded with instructions to enter judgment in favor of the Estates.

MATHIAS, J., concurs.

RILEY, J., concurs in result.