**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANTS:

**ERIC C. BOHNET**
Indianapolis, Indiana

**SCOTT A. WEATHERS**
The Weathers Law Office, PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL D. HAWK**
**DAVID K. HAWK**
Hawk, Haynie, Kammeyer & Chickedantz LLP
Fort Wayne, Indiana

FILED
May 31 2012, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICHARD C. GALLOPS and PATRICIA A. GALLOPS, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 02A05-1107-CT-337 |
| | ) | |
| DAVID HUBBARD, Personal Representative of the Estate of Thelma M. Hubbard, Deceased, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Stanley A. Levine, Judge
Cause No. 02D01-0711-CT-489

**May 31, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

In a classic dispute between siblings over their mother's assets, David Hubbard, acting as personal representative for his mother's estate ("the Estate"), brought an action against his sister Patricia A. Gallops and her husband Richard C. Gallops (collectively, "the Gallopses") for breach of fiduciary duty. The complaint alleged that the Gallopses misappropriated Thelma's assets when they were acting as her attorneys-in-fact during her life. The Estate filed a motion for partial summary judgment on the issue of liability, and the Gallopses filed a response, accompanied by designated materials. The Estate filed a motion to strike the Gallopses' designated materials based on the Indiana Dead Man's Statute. The trial court granted the Estate's motion to strike and eventually granted partial summary judgment in favor of the Estate on the issue of liability. The parties proceeded to a bench trial on the issue of damages.

After the trial court issued its judgment, the Gallopses filed a motion to correct error, alleging that the trial court erred in striking their designated materials. The trial court held a hearing and eventually denied the motion. The Gallopses filed a notice of appeal, again claiming that the trial court erred in striking their designated materials. The Estate filed a motion to dismiss the appeal as untimely, which was denied by the motions panel of this Court. We now deny the Estate's renewed motion to dismiss and address the appeal on its merits. Finding that the materials were inadmissible under the Dead Man's Statute and that the Estate was entitled to partial summary judgment as a matter of law, we affirm.

**Facts and Procedural History**

In 2004, ninety-five-year-old Thelma Hubbard suffered a fall that required hospitalization. She also suffered from progressive dementia. Following her release from the hospital in May 2004, she moved from Bedford to Fort Wayne to live with her daughter and son-in-law, Patricia and Richard Gallops. She lived at the Gallopses' Fort Wayne residence for approximately a year and a half before moving to a local nursing facility in January 2006, where she remained until her death later that year. At different times during her twilight years, Thelma had issued powers of attorney in favor of her three children, David, Patricia, and Larry, so that they could manage her affairs. When Thelma moved in with the Gallopses in Fort Wayne, she gave Richard a durable power of attorney.

Thelma died on November 3, 2006, and her last will and testament designated David and Patricia as co-executors of her estate. David obtained a transfer of Thelma's will from Lawrence County and opened her estate in Allen County. He did not seek to have Patricia appointed as co-executor because he had discovered financial statements implicating her in malfeasance against Thelma, i.e., that she and Richard had depleted Thelma's accounts by writing numerous checks from the accounts and making electronic withdrawals for their own

3

benefit[1] and that they could not account for the whereabouts of Thelma's Buick Skylark that she had taken with her to Fort Wayne.

In December 2007, David filed a lawsuit on behalf of the Estate, claiming that the Gallopses had breached their fiduciary duty as attorneys-in-fact for Thelma and were indebted to the Estate for over $84,000. The Estate filed a motion for partial summary judgment on this issue of liability for the unaccounted-for sums. In their response in opposition to partial summary judgment, the Gallopses designated as evidence Richard's affidavit, select portions of testimony from Richard's and Patricia's depositions, and an accounting. The Estate then filed a motion to strike the Gallopses' designated materials as violating the Indiana Dead Man's Statute. The trial court denied the Estate's motion for partial summary judgment but granted its motion to strike. Thereafter, the Estate filed a motion to reconsider its motion for partial summary judgment, alleging that with the Gallopses' designated evidence stricken, no genuine issue of material fact remained regarding their liability to the Estate. At a hearing on the motion to reconsider, the trial court considered the effect of the stricken evidence as well as the Estate's motion to exclude

---

[1] We note that certain exhibits in the record contain Thelma's full bank account numbers. Such account numbers ordinarily are redacted to maintain confidentiality. Ind. Administrative Rule 9(G). However, because these exhibits were offered in court without objection, we find that any confidentiality is waived pursuant to Indiana Administrative Rule 9(G)(1.2), which states,

> During court proceedings that are open to the public, when information in case records that is excluded from public access pursuant to this rule is admitted into evidence, the information shall remain excluded from public access only if a party or a person affected by the release of the information, prior to or contemporaneously with its introduction into evidence, affirmatively requests that the information remain excluded from public access.

4

certain testimony and exhibits based on the Gallopses' failure to timely exchange witness and exhibit lists.

On February 11, 2010, the trial court granted the Estate's motion to exclude and motion to reconsider, entering summary judgment in favor of the Estate on the issue of liability and ruling that the issue of damages would be determined at trial. Immediately thereafter, the Gallopses sought an interlocutory appeal on the exclusion of witnesses. This Court denied their petition for interlocutory appeal, and a bench trial ensued.

On February 25, 2011, the trial court issued findings of fact and conclusions thereon, ordering the Gallopses to pay the Estate $91,323.92 in damages. The trial court also concluded that an award of attorney's fees may be appropriate due to a finding of constructive fraud on the part of the Gallopses and ordered the Estate to make the proper filings. On March 24, 2011, the Gallopses filed a motion to correct error.

On May 4, 2011, the trial court held a hearing on the motion to correct error and on the Estate's verified petition for attorney's fees. At the close of the hearing, the trial judge verbally instructed the parties to submit proposed findings of fact and conclusions thereon within thirty days of the hearing and indicated that he would rule within thirty days after receipt of the proposed findings. On June 3, 2011, both parties submitted their proposed findings as instructed. On June 8, 2011, the trial court denied the Gallopses' motion to correct error. The court also granted the Estate's verified petition for attorney's fees and set the fees issue for hearing. On July 6, 2011, the Gallopses filed this notice of appeal. The Estate filed a motion to dismiss this appeal as untimely, which the motions panel of this

Court denied. The Estate now renews its motion to dismiss. Additional facts will be provided as necessary.

## Discussion and Decision

### I. Timeliness of Appeal[2]

At the outset, we address the Estate's renewed motion to dismiss this appeal as untimely. Indiana Appellate Rule 9(A)(1) requires that a notice of appeal be filed within thirty days after the trial court rules on the motion to correct error. Indiana Trial Rule 53.3 states,

> In the event a court fails for forty-five (45) days to set a Motion to Correct Error for hearing, or fails to rule on a Motion to Correct Error within thirty (30) days after it was heard or forty-five (45) days after it was filed, if no hearing is required, the pending Motion to Correct Error shall be deemed denied. Any appeal shall be initiated by filing the notice of appeal under Appellate Rule 9(A) within thirty (30) days after the Motion to Correct Error is deemed denied.

Thus, the timeliness of this appeal hinges upon the timing of the trial court's denial of the Gallopses' motion to correct error.

The parties dispute the exact date upon which the motion to correct error was denied and thus the ensuing deadline for filing an appeal. The Estate asserts that the May 4, 2011 hearing triggered the thirty-day period and, with day one being May 5, 2011, the Gallopses' motion therefore was automatically deemed denied on June 3, 2011. Ind. Appellate Rule 25(B). If that is so, then the thirty days within which the Gallopses were permitted to file a

---

[2] We acknowledge the motions panel's denial of the Estate's motion to dismiss, but note that we may reconsider the renewed motion.

6

notice of appeal would have expired on July 3, 2011. With that date falling on a Sunday and followed by Independence Day, the appeal deadline would have fallen on July 5, 2011, one day before the Gallopses filed their notice of appeal. Ind. Appellate Rule 25(A). In contrast, the Gallopses argue that the hearing did not trigger the thirty-day period because, at its conclusion, the trial court gave the parties thirty additional days to submit proposed findings of fact and left open the issue of attorney's fees.

In *Paulsen v. Malone*, 880 N.E.2d 312 (Ind. Ct. App. 2008), another panel of this Court concluded that the thirty-day limit for a trial court to rule on a motion to correct error under Indiana Trial Rule 53.3(A) began to run on the date of the hearing rather than on the date parties submitted their additional authority: "Nothing in the language of the rule suggests that the matter is still being 'heard' after the hearing terminates and while supplemental authority is being offered." *Id*. at 314-15.

More recently, in *Wurster Construction Co. v. Essex Insurance Co.*, 918 N.E.2d 666 (Ind. Ct. App. 2009), another panel of this Court reaffirmed that Trial Rule 53.3 "denial is automatic; it is self-activating upon the passage of the requisite number of days." *Id*. at 671 (citation and internal quotation marks omitted). The *Wurster* court cited our supreme court's decision in *Cavinder Elevators, Inc. v. Hall*, 726 N.E.2d 285 (Ind. 2000), which reiterated the automatic nature of the deemed denied rule, while emphasizing that the rule made a belated grant "voidable and subject to enforcement of the 'deemed denied' provision of Trial Rule 53.3(A)." *Wurster*, 918 N.E.2d at 672 (quoting *Cavinder*, 726 N.E.2d at 288).

7

Unlike the instant case, *Paulsen*, *Wurster*, and *Cavinder* all involved subsequent belated *grants* of motions to correct error. However, when the issue is solely a matter of whether the appeal was timely filed, we find no basis for drawing a distinction as to whether the court granted or denied the motion. Here, the trial court issued its order denying the motion to correct error on June 8, 2011. Thus, the question is whether the thirty-day period within which the Gallopses were required to file their appeal began on that date or the earlier "deemed denied" date of June 3, 2011.

The Gallopses claim that the trial court's verbal instructions regarding proposed findings amounted to an extension of the time limitation for ruling on the motion to correct error. In response, the Estate argues that the trial court failed to satisfy the requirements of Indiana Trial Rule 53.3(D), which states in part,

> The Judge before whom a Motion to Correct Error is pending may extend the time limitation for ruling for a period of no more than thirty (30) days by filing an entry in the cause advising all parties of the extension. Such *entry must be in writing, must be noted in the Chronological Case Summary* ["CCS"] before the expiration of the initial time period for ruling set forth under Section (A), and must be served on all parties.

(Emphasis added.) No such entry was made here.

The Gallopses concede that the trial court's statements at the hearing "did not meet the technical notice requirements of Rule 53.3(D)." Appellants' Reply Br. at 11. Notwithstanding, they contend that the trial court specifically extended the period for ruling by instructing the parties in open court to submit proposed findings within thirty days of the hearing, and stating, "I am going to take thirty (30) days from the time you do your findings on the Motion to Correct Errors in which to rule on the Motion to Correct Errors and *I will*

*take thirty (30) days thereafter.* Mr. Hawk [counsel for the Estate], we are *making a record here*[.]" MCE Tr. at 25-26 (emphases added).

The trial court did not make a written entry in the CCS indicating its thirty-day extension to submit proposed findings. However, the CCS contains two entries for June 3, 2011, exactly thirty days after the hearing, stating that each party filed its proposed findings as instructed at the hearing. This indicates that the parties were aware of and complied with the trial court's instructions despite the absence of a prior written notation in the CCS. As such, the purpose of the writing requirement, notice to all parties, was accomplished by the trial court's statements in open court during the hearing on the motion to correct error. Thus, despite their technical deficiency, the trial court's instructions amounted to substantial compliance with the rule. Moreover, the parties' compliance with the trial court's instructions is evidence that the trial judge accomplished what he intended and attempted to do, and, upon receipt of the proposed findings, the trial court promptly denied the motion to correct error. Based on the foregoing, we conclude that the equities dictate that we address this appeal on the merits.[3] We therefore deny the Estate's renewed motion to dismiss this appeal.

---

[3] To the extent the Gallopses argue that the trial court's action in leaving open the attorney's fees issue compels an extension of the deadline for filing an appeal, we disagree and note that entertaining a petition for fees post-judgment is virtually the norm and "does not disturb the merits of an earlier judgment or order, so it does not implicate Indiana Trial Rules 59(C) or 60(B)." *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 459-60 (Ind. 2012).

9

## II. The Dead Man's Statute

### A. Testimony

The Gallopses first contend that the trial court erred in granting the Estate's motion to strike their testimony and other proffered evidence as incompetent and inadmissible pursuant to the Dead Man's Statute. We review a trial court's ruling on witness competency for an abuse of discretion. *In re Unsupervised Estate of Harris*, 876 N.E.2d 1132, 1135 (Ind. Ct. App. 2007). An abuse of discretion occurs if the trial court's decision contravenes the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law. *Id*.

Indiana Code Section 34-45-2-4, commonly referred to as the Dead Man's Statute, prohibits testimony by survivors in certain circumstances in proceedings involving a decedent's estate. The general purpose of the Dead Man's Statute is to protect a decedent's estate from spurious claims. *Gabriel v. Gabriel*, 947 N.E.2d 1001, 1009 (Ind. Ct. App. 2011). The statute specifically "guard[s] against false testimony by a survivor by establishing a rule of mutuality, wherein the lips of the surviving party are closed by law when the lips of the other party are closed by death." *Id*. (citation and quotation marks omitted). When an executor or administrator of an estate is one party, adverse parties are generally not competent to testify about transactions that took place during the lifetime of the decedent. *Id*.

> Under the Dead Man's Statute, a witness is incompetent to testify when: (1) an administrator or executor is a party, or one of the parties is acting in the capacity of an administrator or executor; (2) the action involves matters that occurred during the lifetime of the decedent; (3) a judgment or allowance may be made or rendered for or against the estate represented by such executor or administrator; (4) the witness is a necessary party to the issue and not merely a

10

party to the record; and (5) the witness is adverse to the estate and testifies against the estate.[4]

*In re Harris*, at 1135-36 (citations and internal quotation marks omitted); Ind. Code § 34-45-2-4.

Here, David was acting as executor of Thelma's Estate when he brought the action against the Gallopses. In addition, the Gallopses' alleged misappropriation of Thelma's assets took place when they were acting as Thelma's attorneys-in-fact during her lifetime. Moreover, David brought the action seeking a judgment for the Estate that he represented and against the Gallopses. Furthermore, the Gallopses were necessary parties to their alleged misappropriation of Thelma's assets. Finally, the Gallopses' interest in the assets was adverse to the Estate, against which they sought to testify. Based on the foregoing, we conclude that the trial court acted within its discretion in ruling that the Gallopses were incompetent to testify about matters involving Thelma pursuant to the Dead Man's Statute.[5]

### B. Accounting

The Gallopses also assert that the trial court erred in ruling that the Dead Man's Statute barred the admission of their accounting. In this vein, they first argue that the Estate waived the right to challenge the admissibility of the accounting by referencing it in their amended complaint. We disagree and note that mere allegations in a complaint do not

---

[4] "An adverse interest that would render a witness incompetent is one by which the witness will gain or lose by the direct, legal operation of the judgment. The interest must be real, present, certain, and vested[.]" *In re Harris*, 876 N.E.2d at 1136.

[5] To the extent the Gallopses attempted to submit Richard's affidavit and portions of their depositions as evidence, we note that such writings are testimonial in nature. *Pendergrass v. State*, 913 N.E.2d 703, 706 (Ind. 2009). As such, they are inadmissible under the Dead Man's Statute.

11

constitute evidence. *See McDonald v. Lattire*, 844 N.E.2d 206, 215 (Ind. Ct. App. 2006) (emphasizing that paragraphs in plaintiff's complaint are allegations, "not testimony, affidavits, sworn statements, or evidence of any kind."); *see also Taylor v. Taylor*, 643 N.E.2d 893, 895 (Ind. 1994) (holding that seeking discovery by deposition or request for admission does not constitute waiver of incompetency under Dead Man's Statute). We also note that the Estate specifically objected to the admission of the accounting when offered at trial. As such, the Estate did not waive the issue of the admissibility of the accounting.

The Gallopses also challenge the trial court's substantive ruling that the accounting was inadmissible under the Dead Man's Statute. However, we find that they have waived this issue for failure to make an offer of proof at trial. Ind. Evidence Rule 103; *see Dennerline v. Atterholt*, 886 N.E.2d 582, 594 (Ind. Ct. App. 2008) ("Failure to make an offer of proof results in waiver of an evidentiary issue."), *trans. dismissed*.

### III. Partial Summary Judgment

The Gallopses also contend that the trial court erred in granting partial summary judgment in favor of the Estate on the issue of their liability for exerting undue influence. We review the trial court's decision to grant or deny summary judgment using the same standard as the trial court. *Woman Enters., Inc. v. Boone Cnty. Solid Waste Mgmt. Dist.*, 805 N.E.2d 369, 373 (Ind. 2004). A motion for summary judgment is properly granted only when the pleadings and designated evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Bank of New York v. Nally*, 820 N.E.2d 644, 648 (Ind. 2005). In determining whether issues

12

of material fact exist, we must accept as true those facts established by evidence favoring the nonmoving party and resolve all doubts against the moving party. *Id.* A trial court's decision to grant summary judgment is clothed with a presumption of validity, and the appellant bears the burden of proving that the trial court erred. *Alexander v. Marion Cnty. Sheriff*, 891 N.E.2d 87, 92 (Ind. Ct. App. 2008), *trans. denied* (2009).

In granting partial summary judgment, the trial court found that, as a matter of law, the Gallopses exerted undue influence upon Thelma that gave rise to a presumption of constructive fraud. Undue influence is "the exercise of sufficient control over the person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." *Gast v. Hall*, 858 N.E.2d 154, 166 (Ind. Ct. App. 2006), *trans. denied* (2007). The universally recognized fact that one who seeks to exert undue influence generally does so in privacy renders undue influence cases rarely susceptible of direct or positive proof. *Id.* As a result, undue influence may be proven by circumstantial evidence, with the only positive and direct proof being circumstances from which one may reasonably infer that undue influence has been exerted. *Id.* In these cases, "it is proper to consider the character of the proponents and beneficiaries, and interest or motive on their part to unduly influence the testator, and facts and surroundings giving them an opportunity to exercise such influence." *Id.* (citation and quotation marks omitted). Thus, because undue influence tends to be fact-sensitive, it is an issue rarely disposed of via summary judgment. *Id.*

13

Certain legal and domestic relationships raise a presumption of trust and confidence by the subordinate party on the one side and a corresponding influence by the dominant party on the other. *Supervised Estate of Allender v. Allender*, 833 N.E.2d 529, 533 (Ind. Ct. App. 2005), *trans. denied*. Among those is the relationship between parent and child. *Id*. Whereas in a parent-child relationship, the parent is generally the dominant party, an adult child can be in the position of dominance by virtue of being the caretaker for the ailing parent. *Id*. at 533-34.

> In such cases, if the plaintiff's evidence establishes (a) the existence of such a relationship, and (b) that the questioned transaction between those parties resulted in an advantage to the dominant person in whom trust and confidence was reposed by the subordinate, the law imposes a presumption that the transaction was the result of undue influence exerted by the dominant party, constructively fraudulent, and thus void. At that point, the burden of proof shifts to the dominant party who must demonstrate by clear and unequivocal proof that the questioned transaction was made at arm's length and thus valid.

*Id.* at 533 (citations and quotation marks omitted). Thus, our review of an undue influence finding includes whether the dominant party's evidence was sufficient to rebut the presumption of undue influence. *Id.*

Here, the trial court found that the Gallopses had used Thelma's money to pay for services that should have been gratuitous due to the family relationship. For example, numerous checks were made out to Richard for financial services and mileage. Reciprocal, natural, and moral duties of support and care give rise to a rebuttable presumption that services are gratuitous when performed for family members. *Cole v. Cole*, 517 N.E.2d 1248, 1250 (Ind. Ct. App. 1988). To rebut the presumption, the family member providing services must demonstrate the existence of an express or implied contract for remuneration. *Prickett*

14

*v. Womersley*, 905 N.E.2d 1008, 1012 (Ind. 2009). This requires the family member to establish both "an intention on the part of [the] recipient of the services to pay or compensate therefor, and an expectation of pay or compensation on the part of the one rendering the services." *Id*. (citation and quotation marks omitted). The record contains no such evidence in this case.

Moreover, here, the Gallopses were not only family members, but they also served as attorneys-in-fact for Thelma. This created an additional fiduciary relationship. *Allender*, 833 N.E.2d at 534. In such a case, the "fiduciary relationship coupled with the transfer of substantial assets raises a presumption of undue influence." *Id*. Although the Gallopses correctly note that Indiana Code Section 30-5-9-2 ostensibly abrogated the common law presumption of undue influence with respect to certain transactions benefiting an attorney-in-fact,[6] the presumption still exists where the attorney-in-fact used his power of attorney to effect the transaction for his benefit. *In re Estate of Compton*, 919 N.E.2d 1181, 1186-87 (Ind. Ct. App. 2010), *trans. denied*.

Here, Richard was given a durable power of attorney specifically pertaining to Thelma's Bank One accounts. This enabled him to write checks and conduct electronic banking vis-à-vis these accounts. The record is replete with checks made out to Richard and electronic withdrawals and purchases with cash back. Some of the checks indicated that they were for financial services; others contained a notation indicating a loan, yet there is no

---

[6] Indiana Code Section 30-5-9-2(b) states that a transfer or transaction is not presumed to be valid or invalid if it is made by the principal, benefits the principal's attorney-in-fact, and is "*not* made by an attorney in fact acting for the principal under a power of attorney." (Emphasis added.)

evidence that any such loan was ever repaid. In short, Richard used the power of attorney to transact banking for his own benefit. Thus, the record supports the trial court's finding of undue influence as a matter of law. Consequently, the trial court did not err in granting the Estate's motion for partial summary judgment.

## IV. Damages

In their reply brief, the Gallopses challenge the $91,323.92 damage award as excessive. In their initial appellant's brief, they make scattered references to sums that allegedly were not used for their benefit in conjunction with their challenge to the undue influence finding. However, they did not raise damages as a separate issue until their reply brief. Thus, we find that they have waived this issue for failure to develop it and provide cogent argument in their initial appellant's brief. *See Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (stating that grounds for error may be framed only in appellant's initial brief and if raised for first time in reply brief, they are waived); *see also* Ind. Appellate Rule 46(C) ("No new issues shall be raised in the reply brief."); Ind. Appellate Rule 46(A)(8) (stating that in appellant's brief, argument on *each* issue must be supported by cogent reasoning).

## V. Attorney's Fees

Finally, the Gallopses challenge the trial court's decision to award attorney's fees to the Estate. We review a trial court's decision to grant a petition for attorney's fees for an abuse of discretion. *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012).

16

In addressing the attorney's fees issue, we first note that Indiana generally adheres to the American rule that a party must pay his own attorney's fees absent an agreement between the parties, a statute, or other rule to the contrary. *Id*. at 458. Here, the parties did not have an agreement regarding attorney's fees. With respect to any statutory proscription for attorney's fees, we note that subsequent to the transactions giving rise to this cause, the Indiana General Assembly enacted Indiana Code Section 30-5-9-11, which states, "An attorney in fact that violates this article is liable to the principal or the principal's successors in interest for damages and an amount required to reimburse the principal or the principal's successors in interest for the attorney's fees and costs paid as a result of the violation." (Effective July 1, 2009.) Because the transactions at issue occurred before July 1, 2009, the statute is inapplicable.

Notwithstanding this statute's inapplicability, in *In re Bender*, 844 N.E.2d 170 (Ind. Ct. App. 2006), *trans. denied*, another panel of this Court affirmed the trial court's award of attorney's fees where the personal representative breached his fiduciary duty to the estate and the court had imposed a constructive trust to recover property that the personal representative had improperly transferred from the estate. *Id*. at 185. In the absence of a statutory provision for attorney's fees in the Probate Code, the trial court cited an attorney's fees provision in the Trust Code as support for its decision to award attorney's fees.[7] The *Bender* court noted that, as a matter of deterrence, equity demands that the fiduciary personally pay for the attorney's

---

[7] The *Bender* court cited Indiana Code Section 30-4-3-11(b), which states that a trustee who commits a breach of trust is liable to the trust beneficiary for a reasonable attorney's fees incurred by the beneficiary in bringing an action on the breach. *Bender*, 844 N.E.2d at 184-85.

17

fees incurred to prevent him from acting outside his own fiduciary powers. *Id*. In citing the

Trust Code by analogy, the *Bender* court concluded,

> The probate court did not err in citing to the Trust Code to support an award of attorney fees. A personal representative, like a trustee, is a fiduciary who acts on behalf of the beneficiary. It was proper for the probate court to conclude that attorney fees available for a fiduciary's wrongdoing in a trust are equally available for a fiduciary's wrongdoing in an estate, and that these fees should be paid by the fiduciary personally.

*Id*.

Likewise, here, the Gallopses were Thelma's attorneys-in-fact and owed a fiduciary

duty to use the powers bestowed on them to protect Thelma and preserve her assets for her

benefit. As discussed *supra*, they exerted undue influence on Thelma, giving rise to the

unrebutted presumption that their transactions were constructively fraudulent. As a matter of

equity, they must bear the burden of paying the attorney's fees incurred by the Estate in its

efforts to recoup the funds which would have been part of the Estate absent their

misappropriation. To hold otherwise would require the Estate, already depleted by these

wrongful acts, to be further depleted by legal fees. Equity will not tolerate such a result.

Thus, we find no abuse of discretion in the trial court's decision to award attorney's fees to

the Estate. Accordingly, we affirm.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.