**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

Attorney for Mattie A. Tedrow:
**WILLIAM L. SHANEYFELT**
Shaneyfelt & Bohnenkemper
Jasper, Indiana

ATTORNEY FOR APPELLEES:

**DEBRA S. ANDRY**
Paoli, Indiana



FILED
Nov 16 2012, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MATTIE A. TEDROW and<br>MARY L. PIERSON, | ) | |
| | ) | |
| Appellants-Petitioners, | ) | |
| | ) | |
| vs. | ) | No. 59A01-1204-EU-196 |
| | ) | |
| COYEVILLE BELCHER as Personal | ) | |
| Personal Representative of the Estate of Everett D. | ) | |
| Belcher, Sr.; EVERETT D. BELCHER, JR.; and | ) | |
| LYNN R. BELCHER, | ) | |
| | ) | |
| Appellees-Respondents. | ) | |

APPEAL FROM THE ORANGE CIRCUIT COURT
The Honorable Larry L. Blanton, Judge
Cause No. 59C01-0906-EU-37

**November 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Mattie Tedrow[1] (Mattie) appeals the decision to uphold the terms of the will of her father, Everett D. Belcher, Sr. (Everett). She argues her brother, Coyeville Belcher (Coy) exerted undue influence upon Everett and Everett lacked the mental capacity to execute a will. Finding evidence in the record to support the findings and conclusions, we affirm.

## FACTS AND PROCUDURAL HISTORY

Everett had five children: Everett Dale Belcher, Jr. (Dale), Coy, Lynn Ray Belcher (Ray), Mary Pierson (Mary), and Mattie. In 2006, Everett executed a will which left his personal gun collection to Coy, with the remainder of his property to be evenly divided among the five siblings. In 2008, Everett executed an identical will. On March 19, 2009, Everett executed a will in which Mattie and Mary received five dollars each, Coy received Everett's gun collection, and the remainder of Everett's estate was to be divided amongst Dale, Ray, and Coy.

Everett died on May 30, 2009. Coy submitted Everett's estate to probate on June 5. On July 6, Mary and Mattie contested Everett's will, alleging undue influence and lack of mental capacity. On December 5 and 6, the probate court held hearings, and on March 30, 2012, it entered findings of fact and conclusions thereon denying the will contest.

## DISCUSSION AND DECISION

The trial court entered findings of fact and conclusions *sua sponte*. When a trial court makes findings of fact and conclusions thereon *sua sponte*, our standard of review is well-

---

[1] Mary Pierson (Mary), Mattie's sister, joined her in the original action. Mary did not appeal, but as a party at trial, she is a party on appeal. *See* Ind. Appellate Rule 17(A) ("A party of record in the trial court . . . shall be a party on appeal.").

settled:

> Where the trial court enters specific findings *sua sponte*, the specific findings control our review and the judgment only as to the issues those specific findings cover. Where there are no specific findings, a general judgment standard applies and we may affirm on any legal theory supported by the evidence adduced at trial.
>
> We apply the following two-tier standard of review to *sua sponte* findings and conclusions: whether the evidence supports the findings, and whether the findings support the judgment. Findings and conclusions will be set aside only if they are clearly erroneous, that is, when the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility.

*Trust No. 6011, Lake County Trust Co. v. Heil's Haven Condominiums Homeowners Ass'n*, 967 N.E.2d 6, 14 (Ind. Ct. App. 2012) (additional formatting omitted).

1. Undue Influence

Undue influence is an exercise of sufficient control over a person, the validity of whose act is brought into question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised. *Gast v. Hall*, 858 N.E.2d 154, 166 (Ind. Ct. App. 2006), *reh'g denied, trans. denied*. It is an intangible thing that only in the rarest instances is susceptible of what may be termed direct or positive proof. *Id*. That difficulty is enhanced by the fact that one who seeks to use undue influence does so in privacy. *Id*. Undue influence therefore may be proven by circumstantial evidence, and the only positive and direct proof required is of facts and circumstances from which undue influence reasonably may be inferred. *Id*.

3

As circumstances tending to support an inference of undue influence, it is proper to consider: the character of the beneficiary, any interest or motive the beneficiary might have to unduly influence the testator, and the facts and surrounding circumstances that might have given the beneficiary an opportunity to exercise such influence. *Id.* Certain legal and domestic relationships raise a presumption of trust and confidence as to the subordinate party on the one side and a corresponding influence as to the dominant party on the other. *Supervised Estate of Allender v. Allender*, 833 N.E.2d 529, 533 (Ind. Ct. App. 2005), *reh'g denied, trans. denied*. One such relationship is that of parent and child.[2] *Id.* In such cases, the law imposes a presumption that a transaction was the result of undue influence exerted by the dominant party, constructively fraudulent, and thus void, if the challenging party's evidence establishes: (a) the existence of such a relationship, and (b) the questioned transaction between those parties resulted in an advantage to the dominant person in whom trust and confidence was reposed by the subordinate. *Id.* Then, the burden of proof shifts to the dominant party, who must demonstrate by clear and unequivocal proof that the questioned transaction was made at arm's length and thus was valid. *Id. And see Villanella v. Godbey*, 632 N.E.2d 786, 790 (Ind. Ct. App. 1994) (presumption may be rebutted by clear and convincing evidence the transaction was fair and equitable and defendant acted in good faith without taking advantage of his position of trust).

Here, Mattie asserted at trial Coy had unduly influenced their father into changing his

---

[2] The parent is generally the dominant party in such a relationship, but a child may be dominant by virtue of being caretaker of an ailing parent. *Allender*, 833 N.E.2d at 533-34.

4

will to essentially disinherit Mattie and Mary. She presented evidence Coy had power of attorney over Everett, visited Everett often, and frequently took Everett on errands. Coy rebutted Mattie's arguments with the following evidence: Everett asked Coy on more than one occasion to take Everett to his lawyer to change Everett's will; when Coy indicated he could not do so, Everett contacted Ray to do so; when Coy took Everett to change his will, Coy was not a party to the changes made, nor was he present during the final signing and witnessing of the will. Coy testified Everett was not happy that Mattie testified during a trial involving the estate of Everett's ex-wife, and Mary testified she had a strained relationship with Everett due to a family argument in the past.

We have found no undue influence in similar situations where a beneficiary cared for a testator relative and was the natural object of the testator's bounty. *See Meyer v. Wright,* 854 N.E.2d 57, 63 (Ind. Ct. App. 2006) (presumption of undue influence was rebutted by son, who had power of attorney over father, where son had looked to his father for advice and guidance, visited him nearly every day, and taken him to his doctor appointments, to the bank, and to dinner and, thus, was the natural object of his father's bounty), *reh'g denied, trans. denied.* Based on the evidence of Mattie and Mary's damaged relationships with Everett, and Coy's willingness to assist Everett for many years up to Everett's dying days, we cannot say the trial court abused its discretion when it determined there was no undue influence in the drafting of Everett's final will.

## 2. Lack of Mental Capacity

We presume every person is of sound mind to execute a will. *Gast*, 858 N.E.2d at 165. To rebut this presumption, a party must present evidence that, when the will was executed, the testator lacked mental capacity to know: "(1) the extent and value of his property; (2) those who are the natural objects of his bounty; and (3) their deserts, with respect to their treatment of and conduct toward him." *Id*. While the testator's mental capacity at the time of executing the will is controlling, evidence of the testator's mental condition prior to the will execution is admissible, as it related to the testator's mental state when executing his will. *Id*.

Mattie and Mary attempted to rebut the presumption Everett had the mental capacity to execute a will by presenting documents and testimony by his home healthcare nurse. However, Coy presented the following evidence: Everett commented on the incident with Mary and was aware of Mattie's testimony at the hearing regarding Everett's ex-wife's possessions; Everett had almost exclusive control over his bank account and understood the amount it held; and Everett had expressed his displeasure with Mary and Mattie. Mattie's arguments to the contrary are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Trust No. 6011, Lake County Trust Co.*, 967 N.E.2d at 14 (appellate court may not reweigh the evidence or judge the credibility of witnesses).

6

**CONCLUSION**

The trial court did not abuse its discretion when it enforced Everett's will because the plaintiffs did not demonstrate Coy unduly influenced Everett to change his will or Everett lacked the mental capacity to change his will. Accordingly, we affirm.

Affirmed.

KIRSCH, J., and NAJAM, J., concur.